## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Martin J. Walsh, Secretary,
U.S. Department of Labor

  v.           Case No. 21-mc-67-SM

R&L Carriers Shared Services, LLC

### **Report and Recommendation**

  The Secretary of Labor initiated this action pursuant to 29 U.S.C. § 657(b) to enforce a subpoena for documents issued by the Occupational Safety and Health Administration ("OSHA") to R&L Carriers Shared Services, LLC ("R&L").  The subpoena seeks documents pertaining to certain issues at R&L's facility in Manchester, New Hampshire, that were raised in a complaint sent to OSHA.

  R&L opposes the petition to enforce the subpoena on the grounds that the subpoena is moot and, if not moot, the subpoena cannot be enforced because it is not reasonable and enforcement would violate the Fourth Amendment.  A hearing was held on January 12, 2022, and the parties provided additional briefing thereafter.  The Secretary requests attorneys' fees, and R&L opposes that request.

## Background[1]

R&L operates a freight shipping facility in Manchester, New Hampshire.  On June 9, 2021, the OSHA office in Concord, New Hampshire, received a complaint report about issues at R&L's facility in Manchester, as follows:

> Roof leaks into the facility onto the smooth concrete floor creating slip hazards for foot traffic and fork lifts. Fork lifts are not maintained. Issues noted during inspections are not repaired, and equipment remains in use. Overhead doors at loading docks are broken, and cannot be safely secured for loading operations. Dock plates are not properly secured to the building and are falling off. [sic] multiple have come off of the building and have caused injuries. Overhead hazard where junction box is damaged and a sheet of steel is hanging overhead.

Doc. 1-2.  In response to the complaint report, the Concord OSHA office opened an investigation into the allegations about R&L's facility.  Bill Todd, a Safety and Health Compliance Officer in OSHA's Concord office, was assigned to the R&L investigation.

Todd went to the R&L facility on June 17, 2021, for an invited on-site inspection.  While he was there, he met with R&L's service manager, Richard Fisher; R&L's associate general counsel, Dan Brake; R&L's employee health and safety compliance manager, Toni Scott; and R&L's director of safety, Steve Maupin. Todd reviewed inspection logs for some of the forklifts at the facility and found that that at least in one instance

---

[1] The background information is undisputed unless otherwise noted.

maintenance issues had not been repaired after they were reported.

The service manager, Fisher, accompanied Todd on his tour of part of the facility.  Because it was not raining, Todd did not have an opportunity to observe whether the roof leaked, and Fisher refused to answer questions about that issue.  The employee health and safety compliance manager, Scott, gave Todd OSHA 300 and 300A logs of work-related injuries and illnesses for 2018-2021, which Todd had asked to see.

Todd asked Scott for additional information on June 22, 2021.  Later in the day, Todd inspected the loading dock area at R&L.  He also took photographs at that time.  Attorney Michael Clarkson, instead of Scott, responded to Todd's June 22 request for information that had been sent to Scott.  Clarkson stated that Todd would have to show probable cause for the information requested.

On June 30, 2021, Todd was informed that R&L was represented by Clarkson.  Thereafter, Todd directed his investigatory requests to Clarkson.

Todd sought to arrange interviews with non-supervisory employees at the facility about the complaint sent to OSHA. Clarkson said that R&L could not consent to the interviews without more information.  After further communications between Clarkson and Todd, Clarkson stated that R&L did not consent to

the interviews and that Todd would not be permitted to interview employees.

Todd then asked for maintenance records and inspection logs for specific forklifts during a specified period.  He also sought contact information for employees who operated the forklifts.  Communications continued between Todd and Clarkson about production of additional information from R&L and employee contact information.  R&L provided a "sampling" of forklift maintenance records.

Clarkson contacted the Department of Labor's Office of the Solicitor about OSHA's investigation of R&L.  Emily Wilkinson, a trial attorney in the Boston Regional Solicitor's Office of the Department of Labor, was the contact for the OSHA investigation of R&L.  Clarkson and Wilkinson held a telephone conference on July 29, 2021, about the document requests.  In response to the conference and Wilkinson's follow-up email, Clarkson produced more forklift inspection records but not all of the information Wilkinson was seeking.

The Area Director of the Concord OSHA office issued a subpoena for documents on August 24, 2021.  The subpoena was issued to "Custodian of Records" at R&L.[2]  The Custodian was

---

[2] When asked by Wilkinson, Clarkson represented that he was not authorized to accept a subpoena on behalf of R&L.  For that reason, the subpoena was served on R&L directly.

directed to appear before the Area Director at the Concord OSHA
office on August 31, 2021, at 12:00 p.m. and to bring and
produce books, papers, and documents with the following
information:

1.    To the extent not already provided, all maintenance
records for the period 5/10/2021 to 6/9/2021 for the five
forklifts on your Job Site identified as: #F2159; F2092;
F1744; F2157; and F2228.[3]

2.    To the extent not already provided, all inspection
logs for the forklifts identified in Request 1 for the
period from 5/10/2021 to 6/9/2021.[4]

3.    A list of the employee(s) who operated one or more
forklifts at the Job Site between 5/10/2021 and 6/9/2021,
which identifies for each such employee: (a) the employee's
first and last name, (b) the employee's number;[5] (c) the
employee's telephone number; (d) the employee's last known
mailing address; and (e) the employee's email address, if
known; or, if such a list does not exist, documents
sufficient to show the foregoing.[6]

---

[3] Since you had approximately 14 or more forklifts on site
during the relevant period, this request only seeks maintenance
records for the five specified forklifts for the specified 30-
day period, so as to minimize the burden on you. This request is
necessary because you previously provided only a sampling of
records for the five identified forklifts during the relevant
period.

[4] As with Request 1, this request is directed to only the
five specified forklifts so as to minimize the burden on you.

[5] You previously provided some documents that referred to
employees by number but not by name. The internal employee
number is necessary to understand which records refer to which
employees.

[6] If it would be less burdensome for you to simply make
employees available for interview at the Job Site, OSHA will
consider withdrawing this request for contact information. (You
previously refused to allow any employees to be interviewed on
site, which is part of why this Subpoena is necessary.)

4.    Documents sufficient to show the Federal ID number for
the entity or entities that employ(s) the person(s) who
operated forklifts at the Job Site between 5/10/2021 and
6/9/2021.

Doc. 1-6, at 7.

In response to the subpoena, R&L, through Clarkson,

provided documents it had produced previously.  R&L objected

generally to the subpoena as "beyond the scope of OSHA's

authority and not reasonably related to any authority OSHA may

have with respect to its investigation of [the complaint against

R&L]."  Doc. 1-4, at 2.  With respect to the request for

information identifying employees, R&L stated that OSHA's

request violated the employees' right to privacy.  The letter

included specific responses to the four categories of

information requested in the subpoena and provided a "sampling"

of maintenance records and inspection logs for the forklifts

identified in the subpoena in Requests (1) and (2), refused to

provide identifying information for Request (3), and did provide

the Federal ID number for item (4).

OSHA, through Wilkinson, sent a letter to Clarkson about

the subpoenaed records that had not been provided.  Wilkinson

stated that if all requested records were not provided by

September 14, 2021, the Secretary would likely begin an

enforcement action in this court.  No response to that letter

was received.  The Secretary filed the petition to enforce the

subpoena on October 4, 2021.  R&L filed an answer.  The
Secretary filed a reply in which he limited Request 3 to the
twenty-three forklift operators who previously had been
identified by R&L.[7]

Todd held a "closing conference" with representatives from
R&L, including Clarkson.  He discussed his findings to date from
his investigation and notified R&L's representatives that R&L
would likely receive a citation for one of the forklifts that
had brake issues.  In his affidavit, Todd states that he told
the representatives and Clarkson that he would submit his
findings to his supervisors who would decide whether to issue a
citation.

OSHA issued a "Citation and Notification of Penalty" to R&L
on December 8, 2021.  Doc. 13-1.  The violation cited was: "On
or about 6/7/2021, [R&L] did not ensure that a fork lift with
defective brakes was removed from service before repairs could
be made."  Id., at 8.  The penalty assessed was $9,753.00.  R&L
filed a notice of contest with OSHA.

---

[7] In the reply, the Secretary stated that R&L had "already
provided OSHA with a roster of 23 forklift operators' first
names, last initials, and work schedules."  If that list of
operators were accurate, the Secretary wrote, all that R&L would
have to do to respond to Request 3 "is determine which of the 23
total employees drove a forklift" during the designated period
and provided the requested contact information for those
operators.

On January 10, 2022, R&L filed a supplemental memorandum in opposition to the Secretary's petition to enforce the subpoena in this case.  In the memorandum, R&L states that Todd told R&L representatives and Clarkson during the closing conference that the investigation of R&L had concluded.  R&L argued that the subpoena was moot in light of the closed investigation, the citation, and the statute of limitations for issuing any other citations.  In response, the Secretary disputed the mootness theories and provided Todd's affidavit in which he denied saying that the investigation had concluded.

The court held a hearing on January 12, 2022, at which the Secretary was represented by Emily Wilkinson and R&L was represented by Michael Clarkson.  At the outset, R&L agreed that OSHA had made a prima facie case for enforcement of the subpoena by satisfying the four elements set out in United States v. Sturm, Ruger & Co., 84 F.3d 1, 4 (1st Cir. 1996).  OSHA confirmed that Request 3 was limited to the twenty-three forklift operators that R&L had previously identified.  The parties submitted additional briefing on the mootness issues after the hearing.

## Discussion

The Secretary petitions to enforce the subpoena under § 657(b), which grants jurisdiction to the district courts to

order a person to produce evidence for purposes of the Secretary's investigation.  As is noted above, R&L objects to enforcement on the grounds that the subpoena is moot and unenforceable.  The Secretary asserts that the subpoena is not moot and is enforceable.

A.  Mootness

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies'."  Campbell-Ewald v. Gomez, 577 U.S. 153, 160 (2016).  "A case becomes moot—and therefore no longer a Case or Controversy for the purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013).  Stated in other terms, a case is moot "when the court cannot give any effectual relief to the potentially prevailing party."  Bayley's Campground, Inc. v. Mills, 985 F.3d 153, 157 (1st Cir. 2021).  "The 'heavy' burden of mootness is on the party raising the issue."  Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021).

R&L makes two arguments in support of its mootness theory.  It first contends that OSHA completed its investigation and issued a citation in December of 2021, which makes the current subpoena moot.  Second, R&L contends that under 29 U.S.C.

§ 658(c) the Secretary cannot issue a citation more than six months after the cited violation occurred and because the actions at issue occurred more than six months ago, the subpoena is moot.  The Secretary contends that the investigation was not complete in December when the citation issued, that the citation issued in December does not make this matter moot, and that § 658(c) does not bar the current enforcement action.

1.  Status of Investigation

R&L argues that the Secretary's authority under § 657(b) to enforce a subpoena is limited to making investigations and that the investigation of R&L concluded with the citation issued in December of 2021.[8]  R&L cites no statute or case law to support its theory that when OSHA issues a citation its investigation into violations by the cited company is concluded.  Instead, R&L relies on parts of OSHA's Field Operations Manual to show that OSHA's authority to issue subpoenas is limited to a reasonable need for completing an investigation and that an OSHA investigation concludes when a closing conference is held.

_____

[8]  To the extent R&L relies on statements made by Safety and Health Compliance Officer Todd during the closing conference for the citation issued in December of 2021, Todd denies, in his sworn affidavit, that he made such statements.  R&L provides no contrary evidence.  Therefore, for purposes of this action, Todd did not tell R&L representatives as the closing conference that the investigation had concluded.

The cited parts of the Field Operations Manual do not establish, as R&L asserts, that a citation issued on one violation arising from an OSHA investigation concludes the entire investigation.  Even if the cited parts did support R&L's theory, that would not provide binding or even persuasive authority for that result in this case.  See, e.g., Triumph Constr. Corp. v. Sec'y of Labor, 885 F.3d 95, 99 (2d Cir. 2018) ("The Manual is only a guide for OSHA personnel to promote efficiency and uniformity, is not binding on OSHA or the Commission, and does not create any substantive rights for employers." (internal quotation marks omitted)).

R&L, who bears the burden of demonstrating mootness, provides no basis to conclude that the subpoena at issue here is moot based on the citation issued in December of 2021.[9]

2.  Time Limit

Because the actions and circumstances that are the subject of the subpoena occurred in June of 2021, R&L argues that the Secretary would be time barred from issuing a citation based on any violation that might be discovered in documents that are the

---

[9] The Secretary cites cases in which courts have held that initiation of civil proceedings on administrative complaints does not moot a pending subpoena.  While those cases are persuasive, they are not necessary given the lack of support provided by R&L for its mootness theory.

subject of the contested subpoena.  R&L argues that the subpoena is moot because any new citation based on the subpoenaed documents would be time barred.  The Secretary disputes that theory.

     The Secretary asks the court to find that equitable tolling applies in this case in order to prospectively postpone the onset of the limitations period.  The six-month limitation period under § 658(c) can be tolled in certain circumstances, including when an employer's failure to comply with an OSHA subpoena has delayed issuance of the citation.  See, e.g., Acosta v. Quality Construction, Inc., 2018 WL 7514591, at *2-*3 (D. Colo. Dec. 21, 2018) (citing cases) (adopted 2019 WL 1077430 (D. Colo. Jan. 24, 2019)).  The Secretary provides persuasive evidence and argument that R&L delayed the investigative process through its resistance to Todd's requests and then its failure to comply with the subpoena, which required this enforcement action.

     Although R&L's conduct to date may well meet the standard for equitable tolling, in the particular circumstances of this case, the timeliness issue is not yet ripe for decision.[10]  The

---

[10] The Secretary argues that under the equitable authority conferred pursuant to 29 U.S.C. § 657(b) the court can impose equitable tolling as to any potential future citation.  The undersigned recommends that the court not reach the issue of the bounds of the court's equitable authority under § 657(b), as it

Secretary issued a citation, based on some of the same conduct and circumstances that are the subject of the pending subpoena. As the Secretary acknowledges, depending on what is learned in response to the subpoena, he may pursue different courses of action. See Doc. no. 17, at 7, fn.7. If the documents responsive to the subpoena demonstrate additional bases for the existing citation, the Secretary may seek to amend the existing citation to include those matters. See, e.g., Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 585 (D.C. Cir. 1985); S. Colo. Prestress Co. v. OSH Review Comm'n, 586 F.2d 1342, 1346-47 (10th Cir. 1978); Bloomfield Mech. Contracting, Inc. v. OSH Review Comm'n, 519 F.2d 1257, 1262-63 (3d Cir. 1975). Alternatively, if the new information shows different violations, the Secretary may decide to issue a new citation for those violations and, if the citation is challenged as untimely, may seek equitable tolling of the limitations period, which would be addressed in the administrative process in the first instance.[11]

---

is not necessary for purposes of enforcing the subpoena at issue in this case.

[11] The Secretary might also dispute R&L's untimeliness defense to a possible future citation based on the discovery rule. See Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Review Comm'n, 765 F.3d 434, 442 (5th Cir. 2014) (holding that the six-month time limit under § 658(c) does not begin until the Secretary discovers or should have discovered the violation); accord Delek Refining, Ltd. V. Occupational

Because those procedural alternatives and possibilities have not yet occurred, as acknowledged by the Secretary, the issues of timeliness and equitable tolling are not before the court.  The timeliness of a citation that <u>might</u> arise from R&L's compliance with the subpoena cannot be determined in the context of this subpoena enforcement action.  Whether or not the Secretary's possible future actions based on documents produced pursuant to the subpoena are time barred does not affect the enforcement issue presented in this case.

The district court should conclude that R&L Carriers has not shown that the Secretary's petition to enforce the subpoena is moot.


B.  <u>Enforceability</u>

For an agency to "obtain judicial backing" for enforcement of an administrative subpoena, the agency must prove four factors.  <u>Sturm, Ruger & Co.</u>, 84 F.3d at 4 (citing <u>United States v. Morton Salt Co.</u>, 338 U.S. 632, 652 (1950).  Those factors are as follows:  ((1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4)

---

<u>Safety & Health Review Comm'n</u> 845 F.3d 170, 179 n.10 (5th Cir. 2016).

proper procedures have been employed in issuing the subpoena."
Id.  "As long as the agency satisfies these modest requirements,
the subpoena is per se reasonable and Fourth Amendment concerns
are deemed satisfied."  Id.

During the hearing, Clarkson on behalf of R&L agreed that
the Secretary had made the necessary showing to meet the Sturm,
Ruger factors.  Doc. no. 14, at 8.  At this point, the court
must enforce an administrative subpoena unless the employer, R&L
in this case, can show that the subpoena "is too indefinite, has
been issued for an illegitimate purpose, or is unduly
burdensome."  McLane Co. v. E.E.O.C., 137 S. Ct. 1159, 1165
(2017) (internal quotation marks omitted).  Instead of relying
on those factors, however, R&L continued to argue at the
hearing, as it did in its answer, that enforcement of the
subpoena would be unreasonable in violation of its Fourth
Amendment rights.

Contrary to R&L's arguments, compliance with the Sturm,
Ruger factors establishes that any Fourth Amendment concerns are
satisfied.  84 F.3d at 4.  Therefore, R&L's arguments against
enforcement of the subpoena on the grounds that the subpoena is
unreasonable, under the Fourth Amendment, have been conceded and
are no longer viable in this case.  To the extent R&L's

arguments can be construed to address appropriate defenses, as
provided in <u>McLane</u>, they are addressed as follows.[12]

    1.  <u>Requests 1 and 2 – Information about Forklifts</u>

Requests 1 and 2 ask for the following:

1.  To the extent not already provided, all maintenance
records for the period 5/10/2021 to 6/9/2021 for the five
forklifts on your Job Site identified as: #F2159; F2092;
F1744; F2157; and F2228.[13]

2.  To the extent not already provided, all inspection logs
for the forklifts identified in Request 1 for the period
from 5/10/2021 to 6/9/2021.[14]

R&L contends that because it has provided some of the
information requested by the Secretary it cannot be compelled to
comply with the subpoena and provide the requested documents.
R&L further contends that (1) it is not required to maintain the
records and logs requested, (2) the complaint that was the basis

---

[12] It appears to be undisputed that R&L provided its federal
identification number in compliance with Request 4, which
satisfied that request.  Therefore, Requests 1, 2, and 3 are the
remaining disputed requests in the subpoena.

[13] Since you had approximately 14 or more forklifts on site
during the relevant period, this request only seeks maintenance
records for the five specified forklifts for the specified 30-
day period, so as to minimize the burden on you. This request is
necessary because you previously provided only a sampling of
records for the five identified forklifts during the relevant
period.

[14] As with Request 1, this request is directed to only the
five specified forklifts so as to minimize the burden on you.

for the OSHA investigation did not specify the forklifts that
are listed in the requests, (3) R&L already allowed the
forklifts to be inspected and photographed and produced some
inspection and maintenance records for those forklifts, and (4)
OSHA has not justified a basis for continuing to request
information.

    None of those bases for opposing the subpoena are viable.
R&L points to no statutory or regulatory limitation on OSHA's
investigation authority that would require a showing that the
requested information or documents are required to be
maintained.  This court has held to the contrary.  See Reich v.
Sturm, Ruger & Co., Inc., 903 F. Supp. 239, 246 (D.N.H. 1995).
Similarly, R&L has not shown that only specific forklifts
identified in the initial complaint can be the subject of the
subpoena, and again, this court has held to the contrary.  Id.
at 245-46.  Although R&L has provided some of the information
requested, it admittedly has not provided all the information
requested.  The requests are limited to records and logs that
have not already been provided.  R&L objects to OSHA's
continuing investigation arising from the initial complaint but
cites no authority that precludes OSHA's practice.

    Further, R&L does not show or even argue that Requests 1
and 2 are indefinite, were issued for an improper purpose, or
are unduly burdensome.  In fact, those requests are limited to

records and logs for four specific forklifts during a one-month period, which is neither indefinite nor unduly burdensome. To the extent R&L argues that the OSHA subpoena must conform to the requirements for search warrants, R&L has not shown that to be true, and McLane holds to the contrary. 137 S. Ct. at 1169.

Therefore, the district court should enforce Requests 1 and 2 in the subpoena.

2.   Request 3 – Employee Identification

Request 3 is directed to obtaining information to identify and contact employees who operated forklifts during a one-month period:

> 3.   A list of the employee(s) who operated one or more forklifts at the Job Site between 5/10/2021 and 6/9/2021, which identifies for each such employee: (a) the employee's first and last name, (b) the employee's number;[15] (c) the employee's telephone number; (d) the employee's last known mailing address; and (e) the employee's email address, if known; or, if such a list does not exist, documents sufficient to show the foregoing.[16]

---

[15] You previously provided some documents that referred to employees by number but not by name. The internal employee number is necessary to understand which records refer to which employees.

[16] If it would be less burdensome for you to simply make employees available for interview at the Job Site, OSHA will consider withdrawing this request for contact information. (You previously refused to allow any employees to be interviewed on site, which is part of why this Subpoena is necessary.)

Request 3 has been limited to the twenty-three employees who were identified as forklift operators during the one-month period.  Therefore, R&L's objection based on the number of employees who might have operated a forklift has been resolved.

R&L disputes the statement in footnote 16 of Request 3 that it previously refused to allow employees to be interviewed at R&L's facility.  It also argues that the request is improper because it requires R&L to create a list of information about employees who operated forklifts, which would be burdensome, because the employees have privacy rights that protect their contact information, and because the Secretary has not demonstrated that it needs information from employees about roof leaks.

With respect to onsite interviews, it is undisputed that R&L refused to allow employees to be interviewed.  R&L asserts that it would not consent to interviews because OSHA did not explain the substance of the interviews.  R&L has not shown that it was entitled to know the subject matter to be addressed in the interviews before consenting to the interviews.  See, e.g., Sierra Resources, Inc. v. Herman, 213 F.3d 989 992-93 (7th Cir. 2000) (finding no due process violation when employer was excluded from OSHA's interviews with employees).

Request 3 gives R&L alternatives to compiling a list of the requested contact information for employees.  If R&L chooses to

compile a list to comply with the request, it has not shown that effort would be unduly burdensome for the twenty-three identified employees.  R&L has not shown that the twenty-three employees have any protected privacy interest in their contact information that has been provided to R&L.  See Perez v. Lasership, Inc., 2015 WL 11109330, at *3-*4 (D. Conn. Sept. 18, 2015).

With respect to seeking information about roof leaks, as is noted above, OSHA's investigation is not limited to the specific matters raised in the initial complaint.  Further, R&L is wrong that the complaint lacks a report about roof leaks.  The first sentence of the complaint states:  "Roof leaks into the facility onto the smooth concrete floor creating slip hazards for foot traffic and fork lifts."  Doc. no. 1-2.  Therefore, information from employees about roof leaks is highly relevant to the complaint and to OSHA's investigation.

The district court should enforce Request 3 in the subpoena as limited by the Secretary.


C.  Attorneys' Fees

In the petition, the Secretary asks for an award of attorneys' fees without any further development.  At the hearing, Wilkinson on behalf of the Secretary explained that she was relying on Federal Rule of Civil Procedure 37(a)(5) for an

award of fees.  She also stated that she intended to file a
motion for the purpose of requesting fees if the court ruled in
favor of the Secretary to enforce the subpoena.  R&L opposes an
award of fees.

Nothing in the OSH Act provides for an award of attorneys'
fees to the prevailing party in an action to enforce a subpoena.
Nevertheless, courts have awarded fees in administrative
subpoena enforcement cases under Rule 37(a)(5), made applicable
by Federal Rule of Civil Procedure 81(a)(5).  See, e.g., Walsh
v. UHS of Fuller, Inc., 2021 WL 4926124, at *2 (D. Mass. Oct.
21, 2021); Perez v. Beachside Home Care, LLC, 2016 WL 8117949,
at *4-*5 (D.S.C. Nov. 22, 2016); Lineback v. Cherry Creek Elec.,
Inc., at *2 (C.D. Ill. Aug. 6, 2015).  Another court, however,
found that Federal Rule of Civil Procedure 45, not Rule
37(a)(5), governed fees in subpoena enforcement actions.  HT
S.R.L. v. Velasco, 2015 WL 13759884, at *6 (D.D.C. Nov. 13,
2015).  On the other side of the dispute, courts have found that
Rule 45 governed requests by the targets of administrative
subpoenas after unsuccessful enforcement actions.  See, e.g.,
U.S. v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n, 727
F. App'x 119, 123-26 (6th Cir. 2018); United States v. Rakhit,
2021 WL 1817349, at *5 (N.D. Ohio May 4, 2021).  As such, the
applicable legal standard may be unsettled.

The Secretary's request for fees is based on a presumption of success on the petition.  While the undersigned recommends that the district judge issue an order to enforce the subpoena, that order will not issue unless and until the district court approves and adopts this report and recommendation.  Further, the parties have not briefed the issue of an award of fees in this case, which would be helpful for determining the outcome.

Therefore, the undersigned recommends that if the district judge orders enforcement of the subpoena, the parties be given an opportunity to brief and provide evidence on the issue of an award of attorneys' fees.

## Conclusion

For the foregoing reasons, the district judge should grant the Secretary's petition (doc. no. 1) and order R&L to provide full responses to Requests 1, 2, and 3 in the Secretary's subpoena consistent with the recommended enforcement order attached.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court.  See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d

554, 564 (1st Cir. 2010).  Any issues not preserved by such

objection(s) are precluded on appeal.  See id.  Failure to file

any objections within the specified time waives the right to

appeal the district court's order.  See Santos-Santos v. Torres-

Centeno, 842 F.3d 163, 168 (1st Cir. 2016).




_____
Andrea K. Johnstone
United States Magistrate Judge

May 12, 2022

cc:  Counsel of Record

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Martin J. Walsh, Secretary,
U.S. Department of Labor

     v.                         Case No. 21-mc-67-SM

R&L Carriers Shared Services, LLC

**Recommended Enforcement Order**

The Secretary of Labor initiated this action pursuant to 29 U.S.C. § 657(b) to enforce a subpoena for documents issued by the Occupational Safety and Health Administration ("OSHA") to R&L Carriers Shared Services, LLC ("R&L").  The Area Director of the Concord OSHA office issued a subpoena for documents on August 24, 2021.  The subpoena was issued to "Custodian of Records" at R&L.  The Custodian was directed to appear before the Area Director at the Concord OSHA office on August 31, 2021, at 12:00 p.m. and to bring and produce books, papers, and documents with the following information:

> 1.  To the extent not already provided, all maintenance records for the period 5/10/2021 to 6/9/2021 for the five forklifts on your Job Site identified as: #F2159; F2092; F1744; F2157; and F2228.[1]

_____

[1] Since you had approximately 14 or more forklifts on site during the relevant period, this request only seeks maintenance records for the five specified forklifts for the specified 30-day period, so as to minimize the burden on you. This request is necessary because you previously provided only a sampling of records for the five identified forklifts during the relevant period.

2.    To the extent not already provided, all inspection logs for the forklifts identified in Request 1 for the period from 5/10/2021 to 6/9/2021.[2]

3.    A list of the employee(s) who operated one or more forklifts at the Job Site between 5/10/2021 and 6/9/2021, which identifies for each such employee: (a) the employee's first and last name, (b) the employee's number;[3] (c) the employee's telephone number; (d) the employee's last known mailing address; and (e) the employee's email address, if known; or, if such a list does not exist, documents sufficient to show the foregoing.[4]

4.    Documents sufficient to show the Federal ID number for the entity or entities that employ(s) the person(s) who operated forklifts at the Job Site between 5/10/2021 and 6/9/2021.

Doc. 1-6, at 7.  As addressed in the report and recommendation, R&L did not fully comply with the subpoena.  R&L did provide documents sufficient to show its federal ID number, as stated in Request 4.  Therefore, Request 4 is satisfied.

In the course of the parties' communications and interactions, the Secretary modified Request 3 to seek a list of

---

[2] As with Request 1, this request is directed to only the five specified forklifts so as to minimize the burden on you.

[3] You previously provided some documents that referred to employees by number but not by name. The internal employee number is necessary to understand which records refer to which employees.

[4] If it would be less burdensome for you to simply make employees available for interview at the Job Site, OSHA will consider withdrawing this request for contact information. (You previously refused to allow any employees to be interviewed on site, which is part of why this Subpoena is necessary.)

identifying information about the twenty-three employees that
R&L identified as those who operated forklifts during the
specified period.  Therefore, Request 3 is amended, as shown in
bold, to state:

> 3. A list of **the twenty-three previously identified**
> employee(s) who operated one or more forklifts at the Job
> Site between 5/10/2021 and 6/9/2021, which identifies for
> each such employee: (a) the employee's first and last name,
> (b) the employee's number;[5] (c) the employee's telephone
> number; (d) the employee's last known mailing address; and
> (e) the employee's email address, if known; or, if such a
> list does not exist, documents sufficient to show the
> foregoing.

The court has approved and adopted the report and
recommendation to grant the Secretary's petition to enforce the
subpoena, as modified.

## Conclusion

R&L shall fully comply with Requests 1 and 2 in the
subpoena and Request 3, as modified and stated in this order,
within fourteen days of the date when this order is issued.

If the Secretary intends to seek an award of attorneys'
fees in this action, he shall file a motion to that effect, with
briefing to support an award and documentation for the amount of

---

[5] You previously provided some documents that referred to
employees by number but not by name. The internal employee
number is necessary to understand which records refer to which
employees.

fees requested within fourteen days of the date when this order

is issued.  R&L will then have fourteen days to respond.


        SO ORDERED.


                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

Date:  _____

cc:  Counsel of Record